**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
In re:                                                                      :        Chapter 11
                                                                                 :
MAXWELL S. PFEIFER and                                      :        Case No. 12-13852 (ALG)
MYRNA J. PFEIFER,                                                  :
                                                                                 :
                              Debtors.                         :
------------------------------------------------------------ x
MAXWELL S. PFEIFER and                                      :
MYRNA J. PFEIFER,                                                  :
                                                                                 :
                              Plaintiffs,                       :
                                                                                 :
       -against-                                                 :        Adv. Pro. No. 13-1320 (ALG)
                                                                                 :
HUDSON VALLEY BANK, N.A.                                 :
                                                                                 :
                              Defendant.                    :
------------------------------------------------------------ x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

RICH MICHAELSON MAGALIFF MOSER, LLP
*Counsel to the Debtors*
  By:   Howard P. Magaliff, Esq.
           Eric T. Moser, Esq.
340 Madison Avenue, 19th Floor
New York, New York 10173

KEVIN A. STEVENS, P.C.
*Counsel to Hudson Valley Bank, N.A.*
  By:   Kevin A. Stevens, Esq.
98 Lafayette Avenue
Suffern, New York 10901

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

**Introduction**

Before the Court is a motion for summary judgment filed by defendant Hudson Valley Bank, N.A. ("Hudson") against plaintiffs and debtors Maxwell S. Pfeifer and Myrna J. Pfeifer ("Debtors"). Debtors brought the above-captioned adversary proceeding to avoid (i) a judgment entered on July 9, 2012 against them in favor of Hudson in the amount of $877,457.99 (the "Judgment") as a preferential transfer pursuant to Bankruptcy Code § 547(b), and (ii) a mortgage granted to Hudson by Maxwell S. Pfeifer ("Pfeifer") and companies owned by him on or about March 11, 2009 in the principal amount of $1,112,000 (the "Mortgage") as a constructive fraudulent transfer pursuant to Bankruptcy Code § 544(b)(1) and New York Debtor & Creditor Law (the "DCL") §§ 272 and 273. Hudson has moved for summary judgment dismissing Debtors' second claim for relief, contending that there was no fraudulent conveyance because the Mortgage merely secured a valid antecedent debt, or, alternatively, that the Mortgage was supported by Pfeifer's receipt of fair consideration. For the reasons set forth below, Hudson's motion for summary judgment is granted.

**Facts**

There is little dispute regarding the operative facts.

Prior to September 5, 2012, Pfeifer and companies of which he was the sole shareholder or member—including 52 Associates, Inc. ("52 Associates"), Garden Place Improvement Corp. ("Garden Place"), and Pioneer Realty, LLC ("Pioneer")—owned several properties in The Bronx, New York (collectively, the "Bronx Properties"). (Amended Complaint at ¶¶ 8-12). Pfeifer personally owned the real properties known as 714 East 241st Street, Bronx, New York and 4643 Furman Avenue, Bronx, New York; 52 Associates owned the real property known as 700 East 241st Street, Bronx, New York; Garden Place owned the real property known as 704

East 241st Street, Bronx, New York; and Pioneer owned the real property known as 4641 Furman Avenue, Bronx, New York. (*Id.*).

Hudson loaned Pfeifer $1,000,000 on or about March 25, 2004 (Loan #236092001) ("Loan #001") and $75,000 on or about March 19, 2008 (Loan #236092003) ("Loan #003"). (Amended Complaint at ¶¶ 25-26). Loans #001 and #003 were secured by a portfolio of stock owned by Pfeifer (the "Stock"). (Amended Complaint at ¶ 27). By March 2009, the value of the Stock had declined, causing the debt to be undersecured. (Amended Complaint at ¶ 28). Following Hudson's demands for additional security for Loans #001 and #003, on March 11, 2009, Pfeifer and his affiliated companies provided additional collateral for those loans to Hudson in the form of the Bronx Properties.[1] *Hudson's 7056-1 Statement* ¶ 2. Simultaneously, Hudson loaned Pfeifer $37,000 (Loan #236092004) ("Loan #004"), also secured by the Mortgage, for closing costs and recording fees relating to the Mortgage. (Amended Complaint at ¶ 35). Additionally, on the same date, Hudson confirmed its agreement to extend by one additional year the maturity date of an unsecured credit line (Loan #1395150989) ("Loan 0989"), which had matured on January 31, 2009, and the maturity date of Loan #001 by five additional years; it had been scheduled to mature on April 1, 2009. *Hudson's 7056-1 Statement* ¶ 3, 9, Exhibit I. After closing of the Mortgage transaction, Loan #0989 was paid in full by virtue of the sale of the Stock, and Hudson confirmed its extension of Loan #001 on April 13, 2009. *Hudson's 7056-1 Statement* ¶ 7, Exhibit J.

On September 9, 2012, the Debtors filed a joint petition for relief under chapter 11 of the Bankruptcy Code, and they remain debtors-in-possession. They filed their complaint on April 8, 2013, and Hudson filed an answer denying the allegations of the complaint on April 16, 2013.

---

[1] While the Debtors' solvency is not at issue in this motion, Debtors assert that at the time Pfeifer granted the Mortgage to Hudson, the sum of Pfeifer's outstanding debts exceeded the value of his property, at fair valuation, exclusive of any exempt property. *Pfeifer's 7056-1 Statement* ¶ 2.

3

On April 17, 2013, the Debtors filed an amended complaint to add the assertion that Pfeifer was either insolvent when he granted the Mortgage or was rendered insolvent by the Mortgage. Hudson filed an answer denying the amended complaint's allegations on April 18, 2013. On May 9, 2013, Hudson filed its motion for summary judgment on the Debtors' fraudulent conveyance claim.

## Discussion

### I. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, once there is a showing of the absence of an issue of fact, the opposing party must produce specific evidence that raises a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" if it might affect the outcome of the suit under the governing substantive law, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

**II.     Constructive Fraudulent Transfer Claim**

Hudson argues that the securing of an antecedent debt is not avoidable as a fraudulent conveyance as a matter of law. Alternatively, it argues that the conveyance of the Mortgage to Hudson was supported by Pfeifer's receipt of fair consideration. In opposition to the summary judgment motion, the Debtors argue that (i) they did not receive fair consideration from the maturity date extensions because Pfeifer could not service the debt regardless, and (ii) in any event, the Court must conduct an intensive factual comparison of the value of the antecedent debt being secured with the value of the collateral. (Opposition to Motion for Summary Judgment at p. 2). According to the Debtors, this factual comparison raises a triable issue of fact. (*Id.*). This Decision will consider each of Hudson's arguments in turn.

Debtors' fraudulent conveyance claims are brought pursuant to § 544(b) of the Bankruptcy Code, which permits the trustee to use applicable state law to avoid transfers of a debtor's interest in property and to obtain a longer look-back period than the two-year period that applies under § 548 of the Bankruptcy Code. There is no dispute that the applicable law here is the New York DCL.

Pursuant to the DCL, a conveyance or obligation by a debtor is deemed constructively fraudulent if it is made or incurred without "fair consideration." N.Y. Debt. & Cred. Law § 273. Fair consideration is defined by the DCL in the following manner:

1. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

2. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272.

Hudson's first argument is that payments or transfers securing an antecedent debt are not avoidable under the DCL as a matter of law.  Many decisions in this District and in other Districts applying New York law have consistently used a per se rule that the grant of collateral for a legitimate antecedent debt is not a constructive fraudulent conveyance.  For example, in *Geron v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.)*, 330 B.R. 362, 363 (S.D.N.Y. 2005) ("*AppliedTheory I*"), the District Court denied the appellant's request "to reject the *per se* rule consistently applied in this District, which provides that a debtor's grant of a security interest in its assets to a lender who has previously given the debtor a cash loan may not be considered a fraudulent conveyance."  *See also In re Handerson*, 3 F. Supp. 92, 93 (S.D.N.Y. 1933) (holding that since the debtor's only purpose in transferring a chattel mortgage to a creditor was to "obtain security for a debt owed to it," the transaction was "by no means fraudulent."); *Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.)*, 2010 Bankr. LEXIS 2720, at *61 (Bankr. D. Del. Sept. 1, 2010) (holding under New York law that "security interests granted by [debtor] in respect of an antecedent debt, like repayment of antecedent debt . . . are necessarily fair consideration.").

Although the Bankruptcy Code's fraudulent conveyance provisions in § 548 are not directly at issue, many of the principles governing fraudulent conveyance law are the same,[2] and many cases under the Bankruptcy Code have similarly held that securing an antecedent debt is not, as a matter of law, a constructive fraudulent conveyance.  *See Cuevas v. Hudson United Bank (In re M. Silverman Laces, Inc.)*, 2002 U.S. Dist. LEXIS 20288, at *15 (S.D.N.Y. Oct. 23,

---

[2] Section 548(a)(1)(B) of the Bankruptcy Code indicates that a transfer made within two years of the debtor's petition date may be avoided if, as a result of the transfer, the debtor received less than a reasonably equivalent value and if the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer, had an unreasonably small capital, intended to incur debts beyond its ability to pay, or made such transfer to or for the benefit of an insider. 11 U.S.C. § 548.  However, the Bankruptcy Code's fraudulent conveyance provisions have only a two-year look-back period, not sufficient to reach the 2009 transactions.

6

2002) (holding that debtor "received 'value' when its antecedent debt was extended and collateralized."); *Anand v. National Republic Bank of Chicago*, 239 B.R. 511, 517 (N.D. Ill. 1999) ("The key factor to bear in mind . . . is that the debtor receives value simply by securing a debt."); *In re Ward*, 36 B.R. 794, 799 (D.S.D. 1984) (concluding that debtor gave reasonably equivalent value by securing an antecedent debt).

The Second Circuit has also commented that preferential treatment of a creditor in and of itself is not ordinarily a fraudulent transfer:

> Even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because "the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them."

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005), quoting *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995); *see also In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 330 (Bankr. S.D.N.Y. 2001) ("If a debtor gives a mortgage to secure a debt it already has . . . the giving of that mortgage may be a preference, but it is not a fraudulent conveyance."); Alan N. Resnick, Bankruptcy Law Manual § 8:34 (5th ed. 2005) ("[M]aking a preference in good faith is not a fraudulent conveyance because value is exchanged by the cancellation of the antecedent debt.").

The per se rule also finds support in the proposition that securing a valid antecedent debt may assist a debtor in its attempts at rehabilitation:

> At first glance, [the per se rule] seems illogical. The debtor receives nothing tangible by securing or paying its debts; rather, it gives away tangible collateral or cash. History and policy, however, can explain this apparent inconsistency. Historically, fraudulent conveyance law was intended to prevent fraud, and securing or paying a legitimate debt is not fraudulent. The rule may promote bankruptcy policy by allowing a troubled debtor the flexibility to secure or pay its debts in order to avoid default or reach an out-of-court settlement, thereby facilitating its rehabilitation. Thus, even under fraudulent conveyance law itself,

7

>the inability to verify the equivalence of values exchanged is irrelevant to the determination of reasonably equivalent value when the debtor secures antecedent debt, an action that may facilitate its rehabilitation.

Steven L. Schwarcz, *Rethinking Freedom of Contract: A Bankruptcy Paradigm*, 77 Tex. L. Rev. 515, 592-93 (1999) (footnotes omitted). Admittedly, the DCL requires that a transfer be supported by "fair consideration," and fair consideration must not be "disproportionately small as compared with the value of the property, or obligation obtained." *See* N.Y. Debt. & Cred. Law § 272. The Bankruptcy Code similarly states that a transfer is avoidable if the debtor receives less than "reasonably equivalent value" in exchange for such transfer. *See* Bankruptcy Code § 548(d)(2)(A).[3] However, there is no support for the Debtors' argument that the amount of the collateral given must be proportionate to the amount of the debt secured, as the grant of collateral does not expand the amount of a creditor's debt and only prioritizes the payment of the debt from specific assets. *See Champion Enters.*, 2010 Bankr. LEXIS 2720, at *61-62, citing *AppliedTheory II*, 323 B.R. at 842 ("The value of collateral securing antecedent debt, and the attendant determination as to whether a lender is undersecured, is irrelevant for fraudulent transfer purposes because the rights of a secured creditor are always limited to the amount of its debt."); *Johnson v. First Nat'l Bank*, 81 B.R. 87, 89 (Bankr. N.D. Fla. 1987) (holding that "the extent of the interest transferred is only the amount of the loan secured by the mortgage, not the value of the property encumbered.").

Moreover, courts find fair consideration where, in exchange for the grant of collateral, a debtor obtains maturity date extensions. These holdings provide support for Hudson's second

---

[3] The Bankruptcy Code's "reasonably equivalent value" and the DCL's "fair consideration" are similar, if not identical requirements. "[C]ourts typically use these terms interchangeably, and do not usually make a distinction between the standard required for reasonably equivalent value, on the one hand, and fair consideration, on the other." *Geron v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.)*, 323 B.R. 838, 840 (Bankr. S.D.N.Y. 2005) ("*AppliedTheory II*").

argument that Pfeifer received value for his grant of collateral to Hudson, even if a per se rule did not apply.

For example, in *M. Silverman Laces*, the "[debtor] was in default, and it is undisputed that as a consequence [the creditor] could have demanded immediate payment and taken steps to collect on all of [the debtor's] obligations." *M. Silverman Laces*, 2002 U.S. Dist. LEXIS 20288, at *15. In exchange for a security interest in the debtor's inventory, the creditor "instead waived its rights to immediately pursue its remedies and it agreed to extend [the debtor's] obligations." *Id.* "By agreeing to forbear and to extend the loans, [the creditor] gave [the debtor] 'breathing room' – an opportunity to avoid default, to facilitate its rehabilitation, and to avoid bankruptcy." *Id.* at *17. The Court concluded that the creditor's forbearance and loan extension in exchange for a security interest in the debtor's collateral constituted reasonably equivalent value. *Id.*

In *Anand*, the debtor assigned his 60 percent interest in a property to a bank as collateral to secure prior loans. *Anand*, 239 B.R. at 514. The bank agreed to forbear from exercising its rights, to waive a past-due principal payment, and to extend the maturity date of an outstanding loan. *Id.* The debtor argued that "he really received nothing" in exchange for his conveyance. *Id.* at 517. However, the Court "look[ed] to the other value, beyond the loan, that the debtor received in conjunction with the transfer." *Id.* at 518. It further observed that "debtors generally do not collateralize an antecedent debt unless they are in default, and under pressure from the creditor to provide security for the loan." *Id.* Accordingly, because the creditor "gave [the debtor] forbearance, a revised maturity date, and waiver of the principal payment, [these considerations] must all be counted as value received by [the debtor]." *Id.* at 519.

Similarly, in *Ward*, the debtors provided a creditor with a second mortgage on their home to secure a delinquent open account in exchange for the creditor agreeing to forbear any

9

collection action against them. *Ward*, 36 B.R. at 796. The Court held that "the promise of forbearance supported the mortgage in an amount of the debt outstanding" and constituted reasonably equivalent value. *Id.* at 799.

The record indicates that circumstances here are similar to those in *M. Silverman Laces*, *Anand*, and *Ward*. There is no dispute on this record that Pfeifer and his affiliated companies granted the Mortgage to Hudson in order to secure Loans #001 and #003, that Hudson requested this additional security because the Stock had decreased in value, and that upon receipt of the Mortgage, Hudson extended the maturity date of Loan #0989 by one year and Loan #001 by five years. Without Hudson's voluntary extension of the maturity dates of Loans #001 and #0989, Pfeifer might have defaulted, which would have enabled Hudson to demand immediate payment. It is speculation whether Debtors could have repaid the loans regardless of any maturity date extension, and the Debtors in fact argue that they could not. It is not speculation that they obtained "breathing room," *M. Silverman Laces*, 2002 U.S. Dist. LEXIS 20288, at *17, and it is too late for them to have second thoughts today. Hudson's extension of the maturity dates of two existing loans qualifies as fair consideration for the grant of collateral.

The cases cited by the Debtors—which hold that a determination of fair consideration is inappropriate to decide under summary judgment—are not on point. In *Klein v. Tabatchnick*, 610 F.2d 1043, 1046 (2d Cir. 1979), the president of the debtor obtained a personal loan from a bank using a shareholder's common stock in another company as collateral. To protect the shareholder against loss, the president of the debtor delivered to the shareholder certain portfolios of the debtor. *Id.* The trustee alleged that this transfer of securities was a fraudulent conveyance. *Id.* The Second Circuit reversed the lower court's grant of summary judgment against the president and shareholder, holding that "fairness of consideration is generally a

10

question of fact." *Id.* at 1047. However, unlike the instant case, the debtor in *Klein* "owed no antecedent debt." *Id.* at 1049. There was a real question of insider dealing and disputed issues of fact. *Id.* at 1047-1048. Here, there is no allegation that the Debtors engaged in insider dealings, and the Debtors have not otherwise raised any material issues of fact. Similarly, in *United States v. McCombs*, 30 F.3d 310, 314-315 (2d Cir. 1994), one of the debtors transferred property already mortgaged to two banks to her daughters. The government sought to set aside this conveyance as fraudulent. *Id.* at 315. However, this transfer did not secure or satisfy an antecedent debt since the debtor's daughters held no preexisting claim against the debtor. *Id.* at 327. Additionally, the Second Circuit reviewed the trial court's decision following a full bench trial; its decision does not discuss whether summary judgment is an appropriate vehicle for determining a fraudulent conveyance claim involving the securing of an antecedent debt. Under the facts of this case, it is.

## Conclusion

For the reasons set forth above, Hudson's motion for summary judgment dismissing the second claim for relief in the amended complaint is granted. Hudson's counsel shall settle an order on three days' notice.

Dated:  New York, New York
        July 23, 2013

                                    */s/ Allan L. Gropper*
                                    UNITED STATES BANKRUPTCY JUDGE